## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**SHANNON ROSE FASANO,**<br><br>       **Debtor.** | **Bankruptcy Case<br>No. 20-00372-JMM** |
| **GARY L. RAINSDON,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**KRISTOPHER GRANT,**<br><br>      **Defendant.** | **Adv. Proceeding<br>No. 21-06005-JMM** |

### MEMORANDUM OF DECISION

**Appearances:**

Heidi Buck Morrison, RACINE OLSON, PLLP, Pocatello, Idaho, Attorney for Plaintiff.

Kristopher Grant, San Diego, California, Defendant pro se.

### *Introduction*

Trustee commenced this adversary proceeding to collect on a promissory note. The Court conducted a trial at which Debtor and Trustee testified, but Defendant refused to testify under oath.

MEMORANDUM OF DECISION–1

After considering the evidence and testimony presented, the arguments of the parties,[1] as well as applicable law, this decision resolves the allegations in the adversary complaint.  Fed. R. Bankr. P. 7052; 9014.[2]

### *Jurisdiction*

Defendant asserted several times at the trial that he did not "argue the facts, jurisdiction, law, or venue" in this adversary proceeding.  Further, at the pretrial conference conducted on January 19, 2022, the Court obtained the consent of the Plaintiff and the Defendant to this Court entering a final order and judgment on all claims in the proceeding.[3]  *See* Pretrial Order, Doc. No. 13 at ¶ 4.  Thus, this Court has jurisdiction and authority under 28 U.S.C. §§ 157 & 1334 to enter a final judgment in this case.  Moreover, venue is appropriate under 28 U.S.C. § 1409(a).

### *Facts*

Debtor and Defendant had a romantic relationship extending from approximately November 2014 to December 2017, and Debtor moved into Defendant's home in California on March 28, 2015.  Tr. at p. 27; Ex. 116 at p. 18.  At the time the relationship began, Defendant was married and in the process of getting a divorce.  Tr. at p. 27.  The divorce was final in December 2016 or 2017.  Ex. 116 at p. 19.  Defendant was

---

[1] Defendant did not file a pretrial or closing brief.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] At the commencement of the trial while attempting to introduce several documents, Defendant asserted that he neither consented to this Court's authority nor waived his right to a jury trial.  Tr. at p. 9.  The pretrial order contradicts this argument.  Doc. No. 13.

MEMORANDUM OF DECISION–2

represented by several law firms during the course of his divorce proceedings, including Higgs, Fletcher & Mack, Basie and Fritz, and the Opus Law Firm. *Id.* at p. 20.

On September 21, 2015, Debtor established a California entity called Green Contracting Services, Inc. ("Green"). Ex. 105. Debtor is the only incorporator listed on the Articles of Incorporation. *Id.* Debtor was the sole owner of Green and held all titles, including CEO. Tr. at p. 26. At some point, Green entered into a Standard Sales Representation Agreement with an entity called Synthetic Grass Warehouse ("SGW") by which Green contracted to sell SGW's turf product on a commission basis ("Sales Agreement"). Ex. 112. The Sales Agreement was to begin on January 1, 2016.[4] *Id.* Because Defendant was in the business of selling artificial turf, on July 24, 2017, Green assigned the Sales Agreement to Defendant, which assignment Debtor, representing Green, and Defendant signed together. *Id.*; Tr. at p. 40.

Green had a checking account at JPMorgan Chase Bank ending in 8069 ("Chase"), a checking account at Navy Federal Credit Union ending in 3577("Navy Checking"), and a savings account at Navy Federal Credit Union ending in 1012 ("Navy Savings"). Green used an accounting service to maintain the company's books. Debtor testified that she used those accounts for some of her personal expenses as well as those of the business, and that Defendant had no access to those accounts. Tr. at pp. 29–31, 77. She also used Green's bank accounts to pay some of Defendant's personal expenses, namely,

---

[4] Debtor testified that the copy she possesses contains only the signature of the representative of SGW, and that she electronically signed the document so she does not have a fully executed copy. Tr. at p. 39.

MEMORANDUM OF DECISION–3

attorney's fees incurred in his divorce.  Debtor testified the following transactions were

payments made by Green for Defendant's personal attorney's fees:

| Date | Bank | Funds Recipient | Amount | Exhibit No. |
|------|------|-----------------|--------|-------------|
| 1/11/16 | Chase | Higgs Fletcher & Mack | $9,700 | 108 at Bates 101 |
| 1/11/16 | Chase | Higgs Fletcher & Mack | $5,300 | 108 at Bates 101 |
| 1/22/16 | Chase | Higgs Fletcher & Mack | $7,500 | 108 at Bates 102 |
| 4/5/16 | Chase | Higgs Fletcher & Mack | $10,000 | 108 at Bates 121 |
| 9/19/16 | Navy Checking | Kristopher Grant | $9,800 | 109 |
| 4/6/17 | Capital One[5] | Jeffery C. Fritz | $6,000 | 110 |
| 4/6/17 | Capital One | Jeffery C. Fritz | $1,240.72 | 110 |
| 5/6/17 | Capital One | Jeffery C. Fritz | $4,000 | 110 |
| | | | $53,540.72 | |

Ex. 108 at Bates Nos. 101, 102, 121; Ex. 109; Ex. 110; Tr. at pp. 44–50.

In the midst of these transactions, Debtor and Defendant entered into an

Unsecured Promissory Note ("Note") on June 15, 2016.  Ex. 100.  Both Debtor and

Defendant signed the Note in each other's presence.  Tr. at p. 35.  The Note provided that

"Borrower," defined as Kristopher Grant, agrees to pay "Lender," defined as Shannon

Fasano, "the total amount of $31,250.00, together with interest payable on the unpaid

---

[5] The Court is unsure who owns the Capital One credit card, although Debtor listed three separate Capital One credit cards on her bankruptcy schedules.  The transaction was documented by Green's bookkeeper, however.

MEMORANDUM OF DECISION–4

principal at the rate of <u>one percent</u> % per annum." *Id.* (emphasis in original).  It calls for payment to be delivered to Lender in a balloon payment "within twelve months of 'Borrowers' dissolution of marriage," and provided for a late payment fee of 5% if "Borrower defaults in payment by more than 30 days of the time set forth." *Id.* Defendant never paid anything on the Note, including interest, nor did Debtor ever make a demand. Tr. at pp. 33–35, 73.  Debtor testified that she disbursed more than the $31,250 sum provided in the Note but had no proof of additional sums.  Tr. at p. 33. Defendant has been in default more than 30 days.  Tr. at p. 34.

On July 24, 2017, Debtor purportedly signed a document entitled "Cancellation and Satisfaction of Promissory Note."  Ex. 112.  The cancellation document does not specifically refer to the date or amount of the Note.  When questioned about this document, Debtor testified she had never seen the document until Trustee's counsel provided it to her after the bankruptcy case had been filed and that she did not sign it.  Tr. at pp. 41–42.  Following the commencement of the adversary proceeding, Defendant apparently attempted to settle the payment of the Note directly with Debtor for $5,000 via text message.  Ex. 112.

On February 5, 2018, Debtor filed a Certificate of Dissolution with the State of California, formally dissolving Green.  Ex. 106.  Only Debtor's name appears as a signatory on the document.

On April 24, 2020, Debtor filed a chapter 7 bankruptcy petition.  20-00372-JMM at Doc. No. 1.  She included the Note as an asset in the amount of $90,000.  *Id.* Subsequently, Trustee determined that the sum owed by Defendant on the Note,

MEMORANDUM OF DECISION–5

including interest and penalties, was $34,315.54, and sent an email to Defendant on

December 9, 2020, demanding payment of that sum.  Ex. 114; Tr. at 94.  Receiving no

funds in response, Trustee commenced this adversary proceeding on April 20, 2021,

seeking a money judgment for the principal plus accrued interest, as well as attorney's

fees and costs incurred in prosecuting this action.

### *Analysis*

When a debtor files a bankruptcy petition, a bankruptcy estate is automatically

created comprised of "all legal or equitable interests of the debtor in property as of the

commencement of the case."  § 541(a)(1).  As such, the Note was included as an asset in

Debtor's bankruptcy estate.  A chapter 7 bankruptcy trustee has the duty to "collect and

reduce to money the property of the estate." § 704(a)(1).  Trustee, therefore, was duty-

bound to investigate and attempt to collect on the Note for the benefit of Debtor's

creditors.  If Trustee's demand on the Defendant was not fruitful, pursuant to Rule

7001(1), Trustee was required to commence an adversary proceeding by filing suit

against Defendant, as the borrower on the Note.

A.  Validity and Enforceability of the Note

The Note contains a choice of law provision stating that the "validity, construction

and performance of this Promissory Note will be governed by the laws of California…."

Ex. 100.  As such, where state law is applicable, this Court will apply California law in

reaching its decision.  A promissory note is a negotiable instrument.  *Yvanova v. New

Century Mortg. Corp.*, 62 Cal. 4th 919, 927, 365 P.3d 845, 850 (2016); *Creative*

MEMORANDUM OF DECISION–6

*Ventures, LLC v. Jim Ward & Assocs.*, 195 Cal. App. 4th 1430, 1445–46, 126 Cal. Rptr. 3d 564, 575–76 (2011)).

California law provides that "'negotiable instrument'" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order" and must meet the following requirements:

> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
> (2) Is payable on demand or at a definite time.
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money[.]

Cal. Com. Code § 3104.

The Court finds the Note meets all of these requirements.  First, a note is "payable to order" if it "is payable (1) to the order of an identified person or (2) to an identified person or order.  A promise or order that is payable to order is payable to the identified person."  Cal. Com. Code § 3109.  Here, the Note is payable to "Lender," defined in the document as "Shannon Fasano," and therefore meets the first requirement.

The same is true for the second requirement.  The Note is payable at a definite time, i.e., within 12 months of Defendant's dissolution of marriage.  Because a divorce action ends with a decree, the Note's due date is calculable and therefore definite.[6] Finally, the Note does not require any act of Defendant other than payment.  Because the Note meets the statutory requirements, it is a negotiable promissory note under California

---

[6] Although Defendant did not raise the statute of limitations as a defense, negotiable instruments have a six-year statute of limitations under California Law. Cal. Com. Code § 3118.  By Defendant's own deposition testimony, his divorce was final in December 2016 at the earliest.  Ex. 116 at p. 19.  Because Trustee commenced the adversary proceeding in April 2021, the statute of limitations will not bar this action to collect on the Note.

MEMORANDUM OF DECISION–7

law.  *See Southern INYO Healthcare District v. Optum Bank, Inc. (In re Southern INYO Healthcare District),* 612 B.R. 750, 759 (Bankr. E.D. Cal. 2020).  Moreover, there is no dispute that Debtor and Defendant executed the Note.

Finally, the Note provides for interest on the unpaid principal to be paid at the rate of one percent, and a late payment fee, in the event Defendant is in default by more than 30 days, of an additional five percent.[7]  Ex. 100.

B.  Trustee's Right to Collect on the Note

The next question is whether Trustee has the right to collect on the Note from the Defendant.  The evidence at trial clearly supports a finding that Debtor paid at least $53,540.72 from Green's accounts to Defendant's various divorce counsel on his behalf, establishing consideration for the Note.[8]  The only disagreement is whether the Note was satisfied by Defendant or canceled by Debtor.

At trial, Debtor clearly testified that Defendant made no payments on the Note.  Defendant's attempts, via text message sent after the commencement of the adversary proceeding, to settle the matter with Debtor for $5,000 outside of the bankruptcy court bolsters that testimony.  Moreover, Debtor testified that she had never seen the document

---

[7] Even with the interest rate of one percent plus the five percent penalty, this rate still remains under the ceiling established by California law.  *See* Cal. Civ. Code § 1916-1 (statutory rate is seven percent); Cal. Const., art. XV, § 1 (the maximum rate lenders can charge on nonpersonal loans is "the higher of 10 percent or 5 percent plus the Federal Reserve Bank of San Francisco's rate").

[8] Defendant argued, by way of his questions during his cross-examination of Debtor, that all of the funds in Green's bank accounts were derived from his efforts in generating commissions through turf sales.  He thus implied that the funds actually belonged to him.  Even if his work efforts were the source of the funds, however, Debtor was the sole owner of Green and held all titles; Defendant had no part of that business.  Moreover, the contract with SWG does not refer to Defendant.  As such, he had no ownership interest in the funds in Green's accounts.

MEMORANDUM OF DECISION–8

titled "Cancellation and Satisfaction of Promissory Note" until Trustee showed it to her during the course of the adversary proceeding, and that she did not sign it.  While no testimony was elicited about where the document came from, Exhibit 102 suggests Defendant emailed the document to Trustee's counsel with the explanation that Debtor released the note when she assigned the SGW contract back to him.  In that email, Defendant explained that the cancellation and satisfaction document was "in storage with my will and trust."  Ex. 102.

Defendant refused to testify under oath, and in fact repeatedly told the Court that he did not argue the facts, jurisdiction, law, or venue, and did not object to entry of a default judgment.  As such, the Court has no testimony to contradict Debtor's statements that she had never seen the satisfaction and cancellation document and that she did not sign it.  Accordingly, the Court finds the Note has not been satisfied and Trustee has established a right to collect payment on the Note from Defendant, including interest and penalties.

C.  Calculation of Judgment

Regarding the calculation of the judgment, including interest and penalties, the Court finds:

1)  the Note provides for interest of one percent per annum on the principal amount of $31,250, totaling $312.50 annually or $.8562 per diem;

2)  the interest accrued from June 15, 2016 through the present, a total of 2,431 days as of January 10, 2023, results in interest totaling $2,081.42;

MEMORANDUM OF DECISION–9

3) the penalty established in the contract is five percent of $31,250, which totals $1,562.50; and

4) as of today's date, January 10, 2023, the total of the principal, interest, and penalties is $34,893.92.

### *Conclusion*

The Court concludes that Trustee has established a right to payment from Defendant for the face value of the Note plus interest and penalties. Accordingly, the Court finds in favor of Plaintiff and against Defendant. The Court directs Plaintiff to file a proposed judgment which sets forth the principal, the accrued interest and penalties.

As Plaintiff's complaint also seeks attorney's fees and costs, Plaintiff is directed to lodge a supplemental filing detailing such fees and costs, and the legal authority therefore, no later than January 24, 2023. Defendant shall have until February 3, 2023 in which to object to such fees and costs, after which the Court will resolve any objections and enter Judgment against Defendant and in favor of Plaintiff.

DATED:  January 10, 2023

_____

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION–10